UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CAROL LYNCH, | ) | CIV. 04-5080-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER REVERSING AND |
| | ) | REMANDING THE |
| JO ANNE B. BARNHART, | ) | COMMISSIONER'S DECISION |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carol Lynch, moves for reversal of the Commissioner of Social Security's decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVIII of the Social Security Act. Defendant opposes the motion. The court reverses and remands the Commissioner's decision denying benefits.

**FACTS**

Lynch was born on March 28, 1945. She is a high school graduate, but has no post-high school training and has never served in the armed forces. She has worked as a cook, a sales clerk, a cashier, a hotel maid, and a bartender. Lynch lives on a farm seven miles from Quinn, South Dakota, and twelve miles from Wall, South Dakota.

Lynch worked as a cook at the Cactus Café when she was injured on December 29, 1998, while lifting a heavy bucket of grease. Immediately after the

injury she continued working, but after half an hour the pain became unbearable and she stopped working. (SR 119). She briefly returned to work at the café, but discontinued her work due to the persistent back pain. During the summers of 2001 and 2002, Lynch worked as a retail clerk at Jake's, a friend's retail store in Wall, South Dakota. Because Lynch could sit, stand, and walk in 2001, she was able to work six hour days that summer. She quit work, however, in the summer of 2002 because of the pain caused by the back injury. (SR 455).

On October 22, 2002, Lynch reached a settlement between herself, the Cactus Café (her former employer), and Mid-Century Insurance Company. Lynch was paid $105,000 representing her past, present, and future claims for indemnity benefits under the worker's compensation laws of the state of South Dakota against Cactus Café. (SR. 257-62, 258).

Lynch has been examined by a number of physicians and other medical professionals. Although she was regularly treated by Dave Custis, a physician's assistant (PA-C) in Wall, South Dakota, she was also treated by Dr. Lawlor, a physiatrist in Rapid City, South Dakota. Throughout the last several years, Lynch's symptoms have been treated with conservative methods including medications and physical therapy. Her symptoms have waxed and waned over the years, but her condition has generally deteriorated. (SR 447-50).

A consultation with PA-C Custis on February 8, 1999, revealed that Lynch had a six week history of lower back pain starting on December 29, 1998. The report explains that Lynch quit her job due to the injury and began physical

2

therapy. The pain was getting better at the time of the consultation, but Lynch had not returned to work. PA-C Custis concluded that Lynch was a well-appearing woman with no obvious impairment and with motor strength of five out of five in all groups. PA-C Custis recommended continuing physical therapy for the pain from the connective tissues in her lower back and that she could go back to work. (SR 119).

A letter dated August 2, 1999, reveals that Lynch visited Dr. Brad Sisson in Fort Collins, CO, after her intractable lower back pain was unresponsive to the conservative treatments mentioned above. Dr. Sisson determined that Lynch suffered from degenerative joint disease of the lumbar spine particularly the L3-4, L4-5, and L5-6 posterior elements. After the administration of an intra-articular facet joint injection on August 8, 1999, Lynch reported a 90 percent improvement in her axial back pain. Dr. Sisson also recommended a radio-frequency neurolysis using radio waves to selectively destroy nerve tissue. (SR 155).

On September 29, 1999, Lynch consulted with Dr. Ganz. Lynch reported significant levels of lower back pain with some pain radiating into her left lower extremity, especially her left foot. She rated the pain as a constant five on a scale from one to ten, ten being unbearable pain. An MRI scan showed some degenerative disc disease in the lower lumbar spine where there is some disc space dehydration. The scan also revealed a small bulging disc on the right side of the spine which effaces, but does not compress, the exiting right S1 nerve root.

Dr. Ganz recommended Lynch continue physical therapy and a weight reduction program.  Lynch claimed that she had started both.  (SR 176).

On December 22, 1999, Lynch reported on a Personal Pain Questionnaire that she experienced both sharp and dull or aching pain in the lower back and hip twenty-four hours a day.  She reported that the pain is worse in the evening and in the morning.  Lynch reported having trouble sleeping in a bed due to the pain and that she only slept four hours a night even when sleeping in a recliner, a location she reported to be more comfortable than her bed.  Lynch also reported being able to walk one tenth of a mile compared to enjoying walking distances of a mile or two before the injury.  She described her completion of household chores and duties as limited by the pain and that she often needs help from her family with the laundry and from mechanical aids in vacuuming.  Lynch says gardening was once enjoyable, but that she is now limited to growing items that do not require weeding or hoeing.  She explained that she can stand or sit for about an hour.  Specifically, she explained that she can ride in a vehicle for an hour, but that while doing so she has to shift her weight constantly in order to find a comfortable spot.  She also explained that at work she is only able to sit for half an hour even with the aid of a pillow behind her back.  After riding in a car for an hour, she claimed her body is exhausted and her muscles ache, requiring her to take time to readjust.  Lynch also reported difficulty in lifting, especially in lifting heavy objects like grease in a kitchen.  (SR. 96-103).

Lynch also described an average day in her Personal Pain Questionnaire. She routinely rises at 3:30 a.m. She described being very stiff after waking up and that her legs barely hold her up immediately after getting out of bed. After a short while she makes coffee and fixes her husband's lunch. After resting she makes one half of the bed and rests again. Then she uses the phone, finishes making the bed, and takes her daughter to school. Some days she takes a friend to coffee in town. Other days she cleans her house in the afternoon. She reports that her cleaning does not get completed because she cannot reach the bathroom floor and other locations around the house. Her daughter finishes the cleaning. In the evening Lynch watches TV before heading to bed. She reports that she desires to work, but cannot bear the pain work brings to her back. She said that her family needs income from her employment and that the need has created problems in her marriage. She explained that she has worked since she was sixteen and that she worked hard her whole life. She explained that the distance to Rapid City has prevented her from seeking work there. (SR 96-103).

In January of 2000, Lynch reported being under treatment for her back injury, but that she could work and would be seeking work as a cashier. PA-C Custis reported that Lynch could stand or walk for half an hour without interruption and for a total of five to six hours a day. He also reported that Lynch can sit for no longer than ten to fifteen minutes without interruption and for a total of only one hour in an eight-hour day. (SR. 223-226). Later that month, an Occupational Capacity Assessment explained that Lynch was capable of lifting

fifty pounds occasionally and twenty-five pounds frequently.  It also detailed how Lynch could stand or walk for six hours in an eight-hour day.  The Assessment determined that Lynch suffered a 5 percent whole body impairment, but that she has responded well to conservative treatment.

In February, March, and April of 2000, Lynch visited Dr. Lawlor for rehabilitation consultation.  During that time, Lynch reported a 50 percent improvement in her symptoms.  Although pain continued to radiate through her back to her hip, Lynch described the pain as less than before.  Dr. Lawlor determined that Lynch had a good lumbar range of motion, but prescribed Skelazin, Vioxx, and epidural steroid injections to ease the pain.

On October 29, 2002, Lynch reported that she could not stand or sit any length of time due to back pain.  She explained that she could not stand or sit for six to eight hours a day because she needs to alternate positions.  Lynch also discussed her need to use hand rails when going down stairs because she had fallen twice while not using the rails.  She also expressed her frustration regarding her inability to function as she did previously.  Lynch said she uses a handicapped sticker in her car, but that regardless she has to take a break every hour from driving or riding in order to walk around and alternate positions.  (SR. 282-291).  In November of 2002, Lynch completed another Personal Pain Questionnaire.  She reported similar responses to the previous questionnaire.  She described her pain as constant, but especially acute when she bends or stoops to lift heavy objects.  She also explained that her activities such as

6

shopping have been largely reduced to periods of one hour. Lynch claimed she could only sit for approximately ten to fifteen minutes depending on her position. She also explained that she can ride in a car for an hour, but that after doing so, a recovery period is needed. (SR. 314-321).

Residual Functional Capacity Assessments completed in January and April of 2003 show similar results. The reports, completed by DDS physicians including Dr. Entwistle, suggest that Lynch can carry twenty pounds occasionally and ten pounds frequently. She can sit, stand, and walk for a total of six hours in an eight-hour workday. Her ability to push and pull is unlimited. She can occasionally climb stairs, stoop, kneel, crouch, and crawl, and she can frequently balance. No manipulative, visual, communication, or environmental limitations were established. According to Dr. Entwistle, her symptoms are attributable to a medically determinable impairment. (SR. 343-50, 351-58).

PA-C Custis completed a Medical Assessment of Ability to do Work-Related Activities on January 30, 2004. He reported that Lynch can lift ten pounds frequently and up to one hundred pounds occasionally and that she can carry the same amounts. He also reported that Lynch cannot sit or stand for even one hour at a time, but that she can walk for an hour at a time without interruption. In his opinion, Lynch can sit or stand for a total of one hour in an eight-hour work day, but cannot walk for an entire hour in any given eight-hour work day. If sitting, Lynch would have to stand for fifteen to twenty minutes before resuming sitting. If standing, Lynch would have to sit for half an hour before resuming standing.

Lynch is never able to use her right foot to operate foot controls and can never climb stairs, ladders or scaffolds, stoop, crouch, kneel, crawl, or balance. (SR. 441-446).

    Dr. Lawlor completed a Medical Assessment of Ability to do Work-Related Activities on May, 31, 2004, which was after the completion of the hearing before the Administrative Law Judge (ALJ). He opined that Lynch can lift ten pounds frequently and eleven to twenty pounds occasionally, but never heavier than twenty-one pounds. Lynch can carry ten pounds frequently and eleven to twenty pounds occasionally, but never above twenty-one pounds. She cannot sit, stand, or walk for an entire hour without interruption, but can sit and stand for a total of two hours in an eight-hour workday. She can walk for a total of three hours in an eight-hour work day. If sitting, Lynch would have to stand for fifteen minutes before sitting again. If standing, she would have to sit for twenty minutes to half an hour before standing. Lynch can occasionally use both her left and her right foot to operate foot controls. Dr. Lawlor explained that Lynch's symptoms wax and wane depending on the increase and decrease of pain in her leg. Although she has responded well to treatment, Dr. Lawlor explained that her overall condition has deteriorated. Her pain limits her tolerance for prolonged activity and Dr. Lawlor recommended that she would do best in a sedentary position where she could alternate sitting, standing, and walking every thirty minutes or as needed.

**ALJ DECISION**

Lynch filed an application for Social Security disability insurance benefits (DIB) under Titles II and XVIII of the Act, U.S.C. §§ 401-33, on October 24, 2002. Lynch initially alleged a disability onset date of December 29, 1998. Her application was denied both initially and upon reconsideration. On February 3, 2004, a hearing was held before the ALJ pursuant to Lynch's request. Lynch changed the alleged disability onset date to October 1, 2001, at the hearing. On April 1, 2004, the ALJ issued an unfavorable decision finding Lynch not disabled finding that she had the residual functional capacity (RFC) to perform a range of sedentary work.

After applying the sequential five-step evaluation process,[1] the ALJ concluded that Lynch was not entitled to benefits. First, the ALJ determined that Lynch was not engaged in substantial gainful activity. Second, the ALJ found that Lynch suffered from the medically determinable impairment of degenerative disc disease and that the impairment was severe. Third, the ALJ found that the

---

[1] The five-step sequential analysis as outlined by the Eighth Circuit is: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).

impairment did not meet or equal the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, appendix 1. Fourth, the ALJ determined Lynch's residual functional capacity by reviewing medical records and testimony of witnesses. The ALJ concluded that Lynch could carry ten pounds frequently and twenty pounds occasionally. The ALJ also noted that Lynch's condition waxed and waned, that her whole person impairment was 5 percent, that she could only sit for one-hour periods of time, and that she could only stand for one-hour periods of time. Based on those conclusions, the ALJ found that the medical evidence supported the severe impairment and that it prevented Lynch from doing past relevant work as a cook, cashier, hotel maid, and bartender. The ALJ relied on testimony from the vocational expert (VE) to determine that Lynch retains an RFC for a sedentary exertional level qualifying her for sedentary work due to her transferable skills. The ALJ determined that Lynch was capable of performing semi-skilled sedentary jobs such as jewelry assembler, cafeteria cashier, jewelry inspector, and clerical sorter. Lynch's application was denied at the fifth step of the evaluation process based on VE testimony regarding her ability to perform sedentary work. (SR 21-31).

    Lynch filed a timely request for review with the Appeals Council on May 28, 2004. She submitted additional evidence on June 2, 2004, including a letter from her attorney and a Medical Assessment of Ability to do Work-Related Activities completed by Dr. Lawlor. Her request for review was denied on July 24, 2004.

**STANDARD OF REVIEW**

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Substantial evidence is less than a preponderance but enough evidence that a reasonable mind might find it adequate to support the conclusion. Fines v. Apfel, 149 F.3d 893 (8th Cir. 1998); Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Review by this court extends beyond a limited search for the existence of evidence supporting the Commissioner's decision to include giving consideration to evidence in the record which fairly detracts from the decision. Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

Under section 405(g), the court is to determine whether there is substantial evidence in the record as a whole to support the decision of the Commissioner and not to reweigh the evidence or try the issues de novo. Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Furthermore, a reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). See also Smith v. Shalala, 987 F.2d at 1374. The court must review the Commissioner's decision to determine if an error of law has been committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992);

11

Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir. 1983).  The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court. Smith v. Sullivan, 982 F.2d at 311; Satterfield v. Mathews, 483 F. Supp. 20, 22 (E.D. Ark. 1979), aff'd per curiam, 615 F.2d 1288, 1289 (8th Cir. 1980).  If the ALJ's decision is supported by substantial evidence, then this court cannot reverse the decision of the ALJ even if the court would have decided it differently. Smith v. Shalala, 987 F.2d at 1374.

### DISCUSSION

Lynch claims that the Appeals Council erroneously rejected Dr. Lawlor's medical report, which was issued after the ALJ decision, and that the ALJ improperly rejected medical opinions presented by PA-C Custis, discredited Lynch's testimony, and that the hypothetical question posed to the vocational expert was flawed.  Because Dr. Lawlor's medical report constitutes new and material evidence that would have had a significant impact on the other questions presented by the claimant, the court does not need to reach the other issues.

Lynch argues that the Appeals Council in this case improperly rejected new evidence submitted by Dr. Lawlor.  After the ALJ decision and before consideration of the Appeals Council, Dr. Lawlor submitted a Medical Assessment of Ability to do Work-Related Activities.  The Appeals Council rejected the Assessment stating "the present record does not support the degree of limitations indicated by Dr. Lawlor." (SR 12).  This court must determine whether

12

rejecting Dr. Lawlor's assessment constitutes reversible error. Reversible error is determined by questioning whether the additional evidence would have changed the outcome of the ALJ hearing:

> In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. See Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir. 1999) (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). Thus, [the] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.' Riley 18 F3d at 622. In practice, this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing.
>
> * * *
>
> [T]he Appeals Council *must* consider evidence submitted with a request for review if it is '(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995) (quoting Williams v. Sullivan, 905 F.2d 214, 216-17 (8th Cir. 1990)). Whether evidence meets these criteria is a question of law this court reviews *de novo*.

Bergmann v. Apfel, 207 F3d 1065, 1068-69 (8th Cir. 2000). "In order to support a remand, new evidence must be 'relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" Estes v. Barnhart, 275 F3d 722, 725 (8th Cir. 2002) (citing Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) (citation omitted).

The new evidence in this case was not only "relevant" and "probative" of Lynch's condition, but it also directly contradicted the ALJ's dispositive findings.

13

In deciding to deny Lynch disability insurance benefits, the ALJ relied on the fact that none of Dr. Lawlor's medical records advised any kind of restriction:

> Given the consistency in medical treatment, and objective findings performed, the undersigned accords great weight to the opinions of Dr. Brett Lawlor, claimant's treating physician.  Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating physician.  Yet a review of the record in this case reveals no restrictions recommended by her treating doctor.  Accordingly, the undersigned finds the claimant retains a residual functional capacity for a sedentary exertional level, with an option to alternate between sitting and standing.

(SR 29).  The assessment completed by Dr. Lawlor on May 31, 2004, however, details a plethora of restrictions on Lynch's ability to sit, stand, and walk that relate to the period in question.  Dr. Lawlor opined that Lynch cannot sit, stand, or walk for an entire hour without interruption.  The report also states that Lynch can sit and stand for a total of two hours in an eight-hour workday and can walk for a total of three hours in an eight-hour work day.  If sitting, Lynch would have to stand for fifteen minutes before returning to sitting.  If standing, she would have to sit for twenty minutes to half an hour before standing.  (SR 447-450).  This assessment directly undermines the ALJ's conclusion that Dr. Lawlor's records show no impairments.  Without that conclusion, there is no evidentiary basis for the hypothetical question posed to the VE nor is there an evidentiary basis for the rejection of PA-C Custis's testimony.  When the record as a whole includes Dr. Lawlor's May 31, 2004, assessment, the ALJ's decision is not supported by substantial evidence.

14

Furthermore, Lynch argues the ALJ erroneously discredited the opinions of PA-C Custis. In his decision, the ALJ relied on the fact that PA-C Custis's medical findings contradicted the lack of impairment in Dr. Lawlor's records: "The PA-C's report appears to contain inconsistencies, and further contrasts sharply with the other evidence of record, which renders it less persuasive, and the undersigned furthermore accords lesser weight to the physician's assistant as well than to that of the claimant's treating physician." (SR 27). The assessment completed after the ALJ decision by Dr. Lawlor reflects many of the same conclusions reached by PA-C Custis who treated Lynch for several years. Dr. Lawlor's assessment corroborates impairment reports completed by PA-C Custis and therefore vitiates the ALJ's decision to discredit Custis's medical opinions.

## CONCLUSION

When Dr. Lawlor's medical assessment is included as part of the record, the substantial evidence on the record as a whole does not support the ALJ's conclusion that Lynch was not disabled under the Act for any physical or mental impairment or combination of physical or mental impairments. The Appeals Council erroneously rejected new relevant and probative evidence. Accordingly, it is hereby

ORDERED that the Commissioner of Social Security's decision denying Carol Lynch's claim for disability benefits and supplemental security income

under Titles II and XVIII of the Social Security Act is reversed and remanded for further proceedings in accord with this decision.

Dated July 1, 2005.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE